Grace Waugh DE SANTIS

v.

UNITED STATES of America.

Civ. A. No. 20176.

United States District Court
E. D. Pennsylvania.

Dec. 10, 1958.

John P. Mason, Philadelphia, Pa., for plaintiff.

Henry J. Morgan, Philadelphia, Pa., for defendant.

GRIM, District Judge.

Plaintiff, the contingent beneficiary after the death of her mother of a National Service Life Insurance policy, has brought this action (the administrative remedies having been exhausted) to obtain additional benefits under the policy. The case was tried before me without a jury.

The insured soldier died on May 14, 1944, in combat while serving in the army, having obtained a policy with a face amount of $10,000. His mother, the primary beneficiary, made application on August 30, 1944, for the monthly benefits to which she was entitled. On September 18, 1944, an award of monthly benefits was made to her at the rate of $52.80 a month. Under the terms of the law and the award, monthly benefits in this amount were to be paid during her entire life, with a provision that they would be paid in any event for ten years after the soldier's death. Thus, if the primary beneficiary should die before the end of the ten years, the contingent beneficiary (insured's sister, plaintiff here) would receive the monthly payments for the remainder of the ten-year period.

The size of the monthly payments was based upon the mother's life expectancy at the time of the insured's death, but they were guaranteed in equal amounts for the rest of her life. Had she lived out her exact life expectancy, these payments would have totaled $10,000. If she had lived longer they would have exceeded $10,000. What actually happened was that she died October 8, 1947, having received only $2,217.60, well under the face amount of the policy. Payments to plaintiff as contingent beneficiary, from the mother's death until the tenth anniversary of the soldier's death, amounted to $4,118.40. Payments to both beneficiaries together amounted to $6,336, or $3,664 less than the face amount of the policy. Plaintiff's action is for this $3,664.

An amendment, approved September 30, 1944, P.L. 452, 58 Stat. 762, to Section 602(h) (2) of the National Service Life Insurance Act, 38 U.S.C.A. § 802 (h) (2), gave veterans' beneficiaries the right to elect another method of payment to them whereby, although the amount of each lifetime monthly payment would be reduced somewhat, the payments would continue in all events until the full face amount of the policies had been paid.

This change in method of payment under the 1944 amendment, however, did not go into effect automatically. In order to take advantage of the provisions of the amendment the beneficiaries (or the insured servicemen, if still in a position to do so) had to make an election showing that they wished to take advantage of the provisions of the new amendment, and the election had to be

made within a reasonable time after notice of the right to make an election had been sent to them.[1] An election was required because the alternative method of payment would not necessarily be advantageous to all beneficiaries. The extension of the payments could benefit contingent beneficiaries, but it would operate to the detriment of primary beneficiaries by reducing the amount of each lifetime monthly payment and, therefore, in the end the total amount which they would receive. It would operate to the detriment of contingent beneficiaries also by reducing the amount of the monthly payments. In the present case if the mother or her daughter had elected to take advantage of the provisions of the 1944 amendment, each monthly payment after the filing of the election would have been reduced from $52.80 to $49.40 a month. Also an adjustment in the amount of the monthly payments would have been required to average out the previous larger payments, which would have meant that until the overpayments of $3.40 a month had been made up, no monthly payments at all would have been made.

In the present case, no election was made. The mother filed no election but accepted the monthly payments until she died on October 8, 1947. Her daughter, the contingent beneficiary, also made no election but continued to accept the monthly payments in the amount awarded to the mother until they stopped on May 10, 1954.

The failure on the part of the mother or daughter to make an election to take advantage of the provisions of the 1944 amendment would mean the end of the case except for the provisions of a regulation (mentioned in footnote 1), which connects the election requirement with a notice requirement. The regulation provided:

"Change in the mode of settlement may be effected if such beneficiary so elects within a reasonable period, ordinarily not more than sixty (60) days after notice has been sent regarding optional settlement."

It is plaintiff's contention that no election is required unless a notice has been sent to a beneficiary. She contends that she never received a notice, that no notice was ever sent to her, and that consequently she can still make her election and recover the balance of the face amount of the policy.

There being no evidence of whether or not notice of her rights under the 1944 amendment was sent to the mother, I will assume that no notice was ever sent to or received by her, although she lived and was a beneficiary for more than three years after the time when the amendment was adopted.

■ However, I give credence to the evidence in the case to the effect that on May 18, 1948, the Philadelphia office of the Veterans' Administration sent to plaintiff by regular mail a proper notice of her right to make the election. I find as a fact that the notice was sent to her and that she received it.[2] I deny credibility to plaintiff's statement that she did not receive the notice which was sent to her on May 18, 1958, and her denial that she ever received notice of her right to make an election.

The amendment of September 30, 1944, provided specifically that its provisions were to operate prospectively only, by stating that it was *not* to apply "in any case in which payments of insurance installments have been commenced prior to" September 30, 1944. However,

---

1. The amending statute says nothing about the notice requirement, but the regulation which was adopted along with it, does. The regulation does not clearly require the giving of notice of the rights which were given by the amendment, but a construction requiring notice may fairly be read into it.

2. Proof of due mailing creates a rebuttable presumption of receipt, Crude Oil Corp. v. Commissioner, 10 Cir., 1947, 161 F.2d 809, and I find plaintiff's evidence insufficient to rebut this presumption.

the Act was amended again by the Act of August 1, 1946, P.L. 589, 60 Stat. 781, which granted to beneficiaries whose payments commenced *prior* to September 30, 1944, the same right to change the method of payment as had been granted by the 1944 amendment to beneficiaries whose payments had commenced *after* September 30, 1944. By these two amendments all beneficiaries of service insurance (or veterans) could make certain that the full face amount of their policies would be paid. There was still a difference, however, between the cases in which monthly payments started before September 30, 1944, and cases in which payments started thereafter. While the regulation adopted under the 1944 amendment provided for notice to beneficiaries, it did not specify any particular kind of notice. However, by the 1946 amendment Congress required that the beneficiaries to whom it applied be given notice by registered mail. Notice by registered mail was not given in the present case, and it becomes important, therefore, to determine whether the present case is governed by the 1944 or the 1946 amendment. Plaintiff contends that the 1946 amendment controls and that since notice was not given by registered mail the situation must be treated as though no notice had been given at all.

■ The monthly payments in the present case commenced on October 14, 1944. This, being after September 30, 1944, causes the present case to be governed by the 1944 amendment rather than the 1946 amendment and, consequently, results in the conclusion that notice by regular mail was sufficient. If the words of these amendments were ambiguous they might be construed most favorably to the plaintiff, but here there is no ambiguity. The meaning of "payment" is clear. It means actual payment, and not the vesting of an interest. United States v. Henning, 1952, 344 U. S. 66, 73 S.Ct. 114, 97 L.Ed. 101. While the interests vested prior to September

30, 1944, and later payments included sums which accrued prior to September 30, 1944, the payments did not actually begin until October 14, 1944, and the 1944 amendment applies.

■ The 1944 regulation provided that the then new method of payment could be used "if such beneficiary so elects within a reasonable period, ordinarily not more than sixty (60) days after notice." The notice was given in May, 1948, the payments stopped in May, 1954, and plaintiff made no attempt to exercise the election until May of 1955. Certainly seven years is beyond a reasonable period, especially since the regulation provides that 60 days would ordinarily be considered reasonable.[3]

■ The 1944 amendment brought about the change in the law by providing that:

"The Administrator under regulations to be promulgated by him may include a provision in the insurance contract authorizing the insured or the beneficiary to elect, in lieu of this mode of payment, a refund life income in monthly installments payable for such period certain as may be required in order that the sum of the installments certain, including a last installment of such reduced amount as may be necessary, shall equal the face value of the contract less any indebtedness with such payments continuing throughout the lifetime of such beneficiary: *Provided Further*, That such optional settlement shall not be available in any case in which such settlement would result in payments of installments over a shorter period than one hundred and twenty months, nor in any case in which payments of insurance installments have been commenced prior to the date of this amendatory Act."

Thus the Administrator was not required in all cases to grant beneficiaries the right to receive the full face amount

---

3. The maximum time specified by Congress in the 1946 amendment is two years, and this period is coupled with the notice requirement.

of the policies. It was within his power to require that an election be made and to limit the right to make an election to a reasonable time after notice.

The facts and law stated in this opinion will constitute the court's findings of fact and conclusions of law. Judgment will be entered for the defendant.